**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION**

| | | |
|---|---|---|
| **MAVIS HERNANDEZ**, | ) | |
| | ) | |
| Plaintiff, | ) | Cause No. CV-07-124-BLG-RFC |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| **UNITED STATES OF AMERICA and** | ) | |
| **RAVINDRA JOSHI,** | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Currently pending before the Court is the United States' Motion for Summary

Judgment [*doc. 37*] and Defendant Ravindra Joshi, M.D.'s Motion for Summary

Judgment [*doc. 41*].  Both Defendants argue that Plaintiff has failed to produce

expert testimony to establish the essential elements of a medical malpractice claim;

i.e., testimony establishing the standard of care and breach thereof by Defendants.

Plaintiff opposes both Motions for Summary Judgment.

## BACKGROUND

On January 19, 2005, Plaintiff, Mavis Hernandez, presented to the Fort Peck Indian Health Service (IHS) Clinic in Poplar, Montana, complaining of pain and swelling in her right ankle.  (Amended Complaint ¶ 9).  Plaintiff previously had an open reduction, internal fixation of a fracture of the same ankle in 1984. (Deposition of Ravindra Joshi, MD on November 13, 2008 (Joshi Dep.), p. 14:6-8).

She was referred to an orthopedic specialist, Ravindra Joshi, M.D., for examination and treatment of her ankle pain.  Dr. Joshi was an independent contractor, providing contract medical services to IHS patients. (SOUF ¶ 2).[1]

Dr. Joshi saw Plaintiff on February 17, 2005, and his differential diagnosis included posttraumatic osteoarthritis and symptomatic hardware from her previous internal fixation.  (Joshi Dep., p. 16:3-22).  Dr. Joshi recommended an ankle brace, heat and elevation of the leg, gentle motion exercises, and anti-inflammatory

---

[1] Dr. Joshi was not an employee of the federal government for purposes of the Federal Tort Claims Act (FTCA). There is a solid line of authority which holds that physicians performing services for government medical facilities under contract are not federal employees, and the United States is not liable for their negligent acts or omissions under the FTCA. See e.g. Carillo v. U.S., 5 F.3d 1302, 1304 (9th Cir. 1993) (recognizing "circuit courts are unanimous that a contract physician is not an employee of the government under the FTCA"). Accordingly, Dr. Joshi is being sued in his individual capacity, not as an employee of the United States.

medication.  (Joshi Dep., p. 19:11-16).  She was scheduled to return for follow-up in

two months.  (Joshi Dep., p. 20:17-18).

When her symptoms did not resolve, Plaintiff returned to the IHS Clinic on

several occasions with complaints of ankle pain.  On April 5, 2005, she was seen by

Dr. Scott Marchant, D.P.M.  (Deposition of Scott Marchant, D.P.M. on November

11, 2008 (Marchant Dep.), p. 19; 10-21).  Dr. Marchant is a podiatrist, and is an

employee of the IHS.  (SOUF ¶ 3).  His examination of Plaintiff on April 5, 2005 is

the focus of her claim against the United States.  Dr. Marchant again took a history,

conducted a physical examination, and ordered x-rays of her ankle.  (Marchant

Dep., p. 20:12-16).  The x-rays revealed marked destruction of her ankle joint, and

Dr. Marchant concluded that Plaintiff was experiencing an "acute Charcot

neuropathic episode."  (Marchant Dep., p. 21:17-20).  He referred

her back to Dr. Joshi for evaluation.  (Marchant Dep. P. 25:1-6).

Plaintiff returned to see Dr. Joshi on May 5, 2005.  Based upon his

examination and repeat radiographs, he concurred with Dr. Marchant's diagnosis

that Plaintiff was suffering from advanced Charcot arthropathy.  (Joshi Dep., p.

22:12-14).  He recommended external support of her ankle to prevent further

deterioration. (Joshi Dep., p. 22:16 - 23:1).

On May 20, 2005, Plaintiff was transported to the intensive care unit of Deaconess Billings Clinic, suffering from hypotension and renal failure.  Infection was suspected, and Billings orthopedist Matthew Kopplin, M.D. was consulted to rule out her ankle as the source of the infection.   Radiographs of her ankle were again ordered, and the radiologist concluded that the joint destruction may be due to marked osteoarthritis, or "another consideration would be Charcot joint." (Deposition of Matthew Kopplin, M.D. on January 9, 2009) (Kopplin Dep.), p. 22:17-19).  Dr. Kopplin examined Plaintiff, reviewed the x-rays, and concluded that this would be an unusual presentation for a septic ankle.  (Kopplin Dep., p. 21:6-16).  Dr. Kopplin also concluded that her presentation was consistent with a Charcot joint.  (Kopplin Dep., p. 21:10-16; 22:15-22).

It was subsequently determined, however, that Plaintiff did have an infection in her ankle area.  Following unsuccessful efforts to irrigate and cleanse the area, and treat the infection with antibiotics, a decision was made to amputate the limb. (Kopplin Dep., p. 33:8-18).  Plaintiff ultimately had an above-the-knee amputation.

In this action, Plaintiff alleges that Drs. Marchant and Joshi were "negligent and violated the standard of care in failing to properly diagnose and properly treat [Plaintiff's] ankle condition, and their negligence caused [Plaintiff] months of delay in having her condition treated. (Amended Complaint ¶ 12).  She alleges this caused

her condition to worsen, and required a more "intensive course of treatment."

(Amended Complaint ¶ 12).

Plaintiff has identified orthopedist, Spencer D. Greendyke, M.D., as an expert

for trial.

## STANDARD OF REVIEW

A party is entitled to summary judgment if that party can demonstrate "that

there is no genuine issue as to any material fact and that the moving party is entitled

to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party is entitled to

summary judgment where the documentary evidence produced by the parties

permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251,

106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The party seeking summary judgment bears the initial burden of informing the

Court of the basis of its motion and identifying those portions of the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, that it believes demonstrate the absence of any genuine issue of

material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91

L.Ed.2d 265 (1986). Where the moving party has met its initial burden, the party

opposing the motion "may not rest upon the mere allegations or denials of his

pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.  The non-moving party may do this by use of affidavits, depositions, answers to interrogatories, and admissions. Only disputes over facts that might affect the outcome of the suit under the governing law are "material" and will properly preclude entry of summary judgment. *Id*.

Summary judgment is appropriate where a party with the ultimate burden of proof at trial is unable to produce evidence to satisfy an essential element of their claim.  The United States addressed this issue in *Celotex Corp.*, and stated:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.  "[T]he standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rules of Civil Procedure 50(a) . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

At the summary judgment stage, the judge's function is not to weigh the evidence or determine the truth of the matter, but to determine whether there is a genuine issue for trial.  However, if the evidence is merely colorable or is not significantly probative, summary judgment may be granted.  *Id.* at 249-50, 106 S.Ct. 2505.

## ANALYSIS

I.   **HAS PLAINTIFF PRESENTED EXPERT TESTIMONY ESTABLISHING THE APPLICABLE STANDARD OF CARE AND BREACH THEREOF BY THE DEFENDANT HEALTHCARE PROVIDERS?**

Plaintiff has brought this action against the United States under the Federal Tort Claims Act (FTCA).  The FTCA provides that "the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury . . . caused by the negligent or wrongful act or omission of any employee . . . under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b).  The "law of the place," in Section 1346(b), has been construed to refer to the law of the state where the act or omission occurred.  *FDIC v. Meyer*, 510 U.S. 471 (1994).

Under Montana law, the plaintiff in a medical malpractice action has a two-part obligation: "first, evidence must be presented to establish the standard of care

in the type of case involved; second, it must be shown that the doctor negligently departed from this recognized standard in his treatment of the plaintiff." *Gilkey v. Schweitzer*, 983 P.2d 869, 871 (Mont. 1999).  Since the standard of care is not readily ascertainable by a layman, this threshold obligation must typically be established by expert testimony.  *Id.*, at 871, citing *Montana Deaconess Hosp. v. Gratton*, 545 P.2d 670, 672 (Mont. 1976).  Without testimony on the applicable standard and departure therefrom, the Plaintiff cannot meet her burden of proof at trial and the case cannot be allowed to go to the fact-finder.  *Falcon v. Cheung* (1993), 257 Mont. 296, 302, 848 P.2d 1050, 1054; *Est. of Nielsen v. Pardis* (1994), 265 Mont. 470, 473, 878 P.2d 234, 235-236.

Dr. Joshi is a board-certified orthopedic surgeon.  For board certified specialists or family practitioners, the Court has adopted a national standard of care; *i.e.*, "that skill and learning possessed by other doctors in good standing practicing with the same national board certification." *Glover v. Ballhagen*, 756 P.2d 1166, 1167 (Mont. 1988).

Dr. Marchant is a non-board certified podiatrist.  The Montana Supreme Court has never squarely addressed the standard of care for non-board certified podiatrists practicing in Montana.

The Montana Supreme Court has abandoned the "locality rule" for non-board certified general practitioners, but has adopted a modified national standard which requires consideration of a "reasonably competent general practitioner acting in the same or similar community in the United States in the same or similar circumstances." *Chapel v. Allison*, 785 P.2d 204, 210 (Mont. 1990).

It is readily apparent that the appropriate standard of care is a national standard, and cannot be established by testimony of the personal practices of a particular physician or group.  This was first made clear by the Montana Supreme Court's decision in *Collins v. Itoh*, 503 P.2d 36 (Mont. 1972).  The Court in that case found that the expert testimony of a physician concerning their personal practice was not sufficient to establish the applicable standard of care.

> The custom and practice of one particular doctor, without knowledge of the general custom and practice among the profession, cannot establish a reasonable basis to infer that defendant departed from the practice, nor does it infer that a doctor who does not follow that particular practice was negligent. (Citations omitted).

*Collins*, 503 P.2d at 41.

The Court reached the same conclusion in *Montana Deaconess Hospital v. Gratton*, 545 P.2d 670 (Mont. 1976). There, the plaintiff attempted to establish the standard of care based upon the testimony of the defendant doctors concerning their experience and practice.  The Court affirmed summary judgment in favor of the

defendant, finding such testimony to be insufficient to meet the plaintiff's threshold

obligation.  A defendant doctor's testimony as to his usual personal practice is not

sufficient to establish a general standard of care.  Also, the personal and individual

method of practice of the defendant doctor is not sufficient to establish a basis for an

inference that he has negligently departed from the general medical custom and

practice of his community.  *Gratton*, 545 P.2d at 673.

In the present case, Plaintiff has failed to identify expert testimony to

establish the standard of care.  Dr. Greendyke's Rule 26 disclosure does not

articulate the appropriate standard of care, or whether Defendants violated that

standard.  Additionally, his deposition testimony reveals the he made no attempt to

determine what the national standard of care may have been for physicians or

podiatrists under the same or similar circumstances when presented with Plaintiff's

condition.  (Greendyke Dep., p. 86:25-87:3; 87:4-7)).

Dr. Greendyke specifically states in his deposition that in evaluating the care

of Dr. Marchant, he based his opinion on whether he would have "spanked" a

podiatrist working under him for taking similar action while he was in the military.

(Greendyke Dep., p. 96:6 - 97:23).  Dr. Greendyke reiterated several times in his

deposition that he was evaluating the care provided by Drs. Marchant and Joshi

based on what he personally would have done, not by reference to any national

standard of care.  (Greendyke Dep., p. 86:19-24).  Dr. Greendyke also testified at his deposition that his opinions were based on the fact that he and his orthopedic partners in Idaho would have personally handled her care differently.  (Greendyke Dep., p. 25:14-24).

The relevant inquiry in this case is what the standard of care requires, and whether there was a departure from that standard.  Plaintiff has offered no expert testimony on this issue.  Without expert testimony, there are no genuine issues of material fact and summary judgment in favor of Defendants is appropriate.

Defendants' Motions for Summary Judgment are GRANTED [*docs. 37 and 41*).  The Clerks are directed to enter Judgment in favor of Defendants and close this case accordingly.

DATED this 12th day of August, 2009.

_/s/ Richard F. Cebull_____
RICHARD F. CEBULL
U.S. DISTRICT COURT JUDGE